Per C. Olson, OSB #933863
HOEVET OLSON, PC
1000 SW Broadway, Suite 1740
Portland, Oregon 97205
Telephone: (503) 228-0497
Facsimile: (503) 228-7112
Email: per@hoevetlaw.com

Of Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DANTE LAMON TAPLIN,<br><br>Defendant. | Case No. 3:25-CR-00040-IM |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

# TABLE OF CONTENTS


1. Defendant Has Standing To Move To Suppress Evidence Because He Did Not Voluntarily Abandon The Firearm ..... 1

2. The Stop Was Unlawful Because It Was Based On An Unlawful Search, i.e., The GPS Tracking ..... 5

   a. General Condition P did not authorize the probation officer to place defendant on GPS monitoring ..... 5

   b. The tracking and sharing of GPS data with police was not lawful ..... 12

3. Evidence Of Drugs And Cash Is Not Admissible As Search Incident To An Arrest ..... 16

4. Suppression Is The Correct Remedy ..... 17

5. Conclusion ..... 18




HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

# TABLE OF AUTHORITIES

## Cases

*Brendlin v. California*,
551 U.S. 249 (2007).................................... 3

*Brower v. County of Inyo*,
489 U.S. 593 (1989).................................... 3

*California v. Hodari D.*,
499 U.S. 621 (1991).................................... 2, 3

*Carpenter v. United* States,
585 U.S. 296 (2018).................................... 14

*Chatrie v. United States*,
146 S.Ct. 2193 (2026).................................... 13

*Samson v. California*,
547 U.S. 843 (2006).................................... 5, 11

*Simon v. City and County of San Francisco*,
135 F.4th 784 (9th Cir. 2025).................................... 14

*State v. Austin*,
344 Or App 368 (2025).................................... 6

*State v. Canepa*,
313 Or App 348 (2021).................................... 8

*State v. Cunningham*,
345 Or App 546 (2025).................................... 6

*State v. Davis*,
133 Or App 467 (1995).................................... 10

*State v. Gulley,*
324 Or 57, 921 P2d 396 (1996).................................... 7

*State v. Guzman*,
164 Or App 90 (1999).................................... 8

*State v. Hardges*,
294 Or App 445 (2018).................................... 6



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

*State v. Kelemen*,
296 Or App 184 (2019) ........................................................................................ 6

*State v. Maciel-Figueroa*,
361 Or. 163, 389 P.3d 1121 (2017) ....................................................................... 7

*United States v. Austin,*
66 F.3d 1115 (10th Cir.1995) ................................................................................ 1

*United States v. Cervantes*,
859 F.3d 1175 (9th Cir. 2017) ........................................................................... 5, 11

*United States v. Freeman*,
479 F.3d 743 (10th Cir. 2007) ............................................................................. 14

*United States v. Garcia,*
909 F.2d 389 (9th Cir.1990) .................................................................................. 1

*United States v. Garzon,*
119 F.3d 1446 (10th Cir.1997) .............................................................................. 1

*United States v. Gilman*,
684 F.2d 616 (9th Cir. 1982) ................................................................................. 4

*United States v. Humphrey*,
549 F.2d 650 (9th Cir. 1977) ................................................................................. 2

*United States v. Matthews*,
250 F. Supp. 3d 806 (D. Colo. 2017) .................................................................. 14

*United States v. Nordling,*
804 F.2d 1466 (9th Cir.1986) ................................................................................ 1

*United States v. Ramos,*
39 F.3d 219 (9th Cir. 1994) ................................................................................... 9

*United States v. Smith*,
155 F.3d 1051 (1998) .......................................................................................... 13

*United States v. Stephens*,
206 F.3d 914 (9th Cir. 2000) ........................................................................... 1, 2, 5

*United States v. Terry*,
909 F.3d 716 (4th Cir. 2018) ............................................................................... 12



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

## Statutes and Constitutional Authorities

Or. Const, Art. I, § 9 .......... 7

ORS 144.102 .......... 6, 8

ORS 144.103 .......... 9

U.S. Const, Amend. IV .......... 1, 5, 13, 17

## Other Authorities

A. Cornelius,
Search and Seizure 163-164 (2nd ed. 1930) .......... 3



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

Defendant Dante Lamon Taplin, through his counsel, Per Olson, hereby replies to the Government's Response to Defendant's Motion to Suppress Evidence. (ECF 77).

An evidentiary hearing on this matter is scheduled for September 15, 2026, at 10:00 a.m. Discovery is not complete. The government has informed defendant that remaining discovery will be provided very shortly. In addition, defendant expects that Multnomah County Department of Community Justice will produce documents responsive to defendant's subpoena *duces tecum* on August 21, 2026. Defendant requests leave of the Court to submit supplemental memoranda in support of the suppression motion as may be warranted to incorporate new evidence.

**1. Defendant Has Standing To Move To Suppress Evidence Because He Did Not Voluntarily Abandon The Firearm**

The government argues that Mr. Taplin lacks standing to move to suppress because he voluntarily abandoned the firearm by throwing it when confronted by police. But the government ignores the key fact that the police seized Mr. Taplin *before* he tossed the firearm. Because the seizure was unlawful, the purported abandonment was not voluntary.

In *United States v. Stephens*, 206 F.3d 914, 917 (9th Cir. 2000), the Court held:

> A defendant who voluntarily abandons property has no standing to contest its search and seizure. *United States v. Garcia,* 909 F.2d 389, 391 (9th Cir.1990). But "abandonment is a question of intent." *United States v. Nordling,* 804 F.2d 1466, 1469 (9th Cir.1986). "An abandonment must be voluntary, *and an abandonment that results from [a] Fourth Amendment violation cannot be voluntary*." *United States v. Austin,* 66 F.3d 1115, 1118 (10th Cir.1995); *see also United States v. Garzon,* 119 F.3d 1446, 1451 (10th Cir.1997) ("*Abandonment will not be recognized when it is the result of prior illegal police conduct*.").

/ / /

/ / /



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

*Id.* at 917 (emphasis added); *see also United States v. Humphrey*, 549 F.2d 650, 652 (9th Cir. 1977) ("[A]cts taken to establish abandonment could not be considered by the trial court if they were tainted by unlawful police action.")

In *Stephens*, police seized passengers on a bus by boarding the bus and announcing they could either leave or remain and be required to consent to a search of their belongings. Stephens remained on the bus, and, when questioned, denied that a bag was his. The Court held that he did not voluntarily abandon the bag because he was unlawfully seized when he denied possessing the bag, *i.e.,* at the time of the purported "abandonment." *Id*. at 918.

Thus, whether Mr. Taplin has standing to challenge the arrest depends on whether he was seized at the time of the purported abandonment. In *California v. Hodari D.*, 499 U.S. 621 (1991), the Supreme Court addressed the question of seizure in this context. The juvenile in *Hodari* and other youth ran away when they saw police in their neighborhood. Their flight made the officers suspicious so they gave chase. The officer was almost upon Hodari when he tossed away a small rock of cocaine. On appeal, the issue came down to whether the juvenile had been "seized" within the meaning of the Fourth Amendment at the time that he dropped the drugs. Without a seizure, the juvenile had no grounds to contest the lawfulness of the officer's conduct.

The Court held that "[a]n arrest requires *either* physical force (as described above) *or*, where that is absent, *submission* to the assertion of authority." *Id*. at 626 (emphasis in original). The Court ultimately held that the juvenile was not seized when he threw the crack because he did not submit to the officer's pursuit and had not *yet* been tackled by him. *Id.* at 629. The Court took the occasion to describe the "physical



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

force" sufficient to constitute a seizure. The Court described "physical force" to include "'merely touching, however slightly, the body of the accused, by the party making the arrest and for that purpose, although [the officer] does not succeed in stopping or holding him even for an instant * * *.'" *Id.* at 625, *quoting* A. Cornelius, Search and Seizure 163-164 (2nd ed. 1930). "The mere grasping or application of physical force with lawful authority, whether or not it succeeding in subduing the arrestee, [is] sufficient" to constitute an arrest or Fourth Amendment "seizure of the person." *Id.* at 624.

Thus, any degree of physical touching accompanied by the officer's intent to arrest constitutes a seizure. *See also Brendlin v. California*, 551 U.S. 249, 254 (2007), *quoting Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (a person is seized when the officer restrains freedom of movement by means of physical force or show of authority "through means intentionally applied").

In *dictum,* the Court in *Hodari* suggested that a seizure would not continue "during a period of fugitivity." *Hodari*, at 625. Thus, if an officer physically contacts a suspect who then breaks away and escapes for some appreciable time and distance, the suspect is no longer "seized" during that "period of fugitivity." But here, Mr. Taplin submitted to the officers' commands immediately after the physical contact with Officer Baer. The video shows that only *two seconds* elapsed from the physical contact with Officer Baer, the subsequent tossing of the gun, and Mr. Taplin submitting to the other officers' commands by holding up his arms. There was no "period of fugitivity."[1] And

[1] Officer Baer's report states that when he got out of his patrol car to block Taplin, he was reacting to the other officers' initial commands to Taplin to stop. His BWC video shows him getting out of car about two seconds before colliding with Mr.



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

importantly, Mr. Taplin is seen throwing the object *after* the physical contact with Officer Baer which marks the commencement of the seizure.

Citing *United States v. Gilman*, 684 F.2d 616 (9th Cir. 1982), the government asserts there must be "nexus" between the law enforcement conduct and the abandonment of property for any evidence to be suppressed. *Gilman* is a good illustration of what a lack of nexus looks like. The defendant abandoned contraband materials at a self-storage facility after being warned by the owner that failure to pay his storage fee would result in abandonment. The materials introduced at trial were turned over to the police by the facility owner as a result of that abandonment. *Id.* at 618, 619-20. The police had also obtained a warrant for the facility that was supported by probable cause. The Court held that even if the warrant did not comply with certain procedural requirements discussed in the opinion, "any possible impropriety would have been too remote to have tainted seizure of the abandoned materials." *Id*. at 620.

In contrast, the act the government points to as constituting Mr. Taplin's abandonment of the firearm occurred within a second of the arrest he contends was unlawful. The discovery of the firearm was a direct result of the arrest. Clearly there is a nexus. The defendant's statements to police while submitting to the seizure do not amount to a voluntary abandonment because he did not expressly disavow the gun and, in any event, he made those statements after he had been seized, as in *Stephens*.

In sum, the purported act of abandonment was not a voluntary abandonment because Mr. Taplin was first seized by virtue of his contact with Officer Baer and he was

---

Taplin. Thus, the overall time period from the officers' initial commands to Mr. Taplin to stop and him putting up his arms in submission to their commands is about five seconds.



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

still seized when he threw the gun. As in *Stephens*, he has standing to challenge the seizure as unlawful.

**2. The Stop Was Unlawful Because It Was Based On An Unlawful Search, i.e., The GPS Tracking**

**a. General Condition P did not authorize the probation officer to place defendant on GPS monitoring**

The government argues that requiring Mr. Taplin to wear a GPS device was authorized by "General Condition P" (GCp) which required Mr. Taplin to abide by the "direction" of the probation officer. Starting with the undisputed premise that GPS tracking is a search for Fourth Amendment purposes, the government's reliance on General Condition P fails for two independent reasons: (1) under the federal case law, only a valid ***search*** condition may justify a parole or probation search, and (2) under Oregon law (which needs to be followed for the search to be considered reasonable), the general "abide by the direction of the probation officer" condition does not extend to requiring consent to searches.

The first point is stated clearly in *United States v. Cervantes*, 859 F.3d 1175, 1183 (9th Cir. 2017). The Court held that "[a] search of a parolee that complies with the terms of a valid ***search*** condition will usually be deemed reasonable under the Fourth Amendment." *Id.* at 1183 (emphasis added). A valid probation search must be grounded in a valid "search condition" in part because, in order to meet the Fourth Amendment requirement, the condition must clearly and unambiguously inform the supervisee of the requirement that he consent to the search. *Cervantes*, 859 F.3d at 1182, *citing Samson v. California*, 547 U.S. 843, 852-54 (2006). General Condition P does not clearly and unambiguously inform Mr. Taplin that he must consent to



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

searches, and therefore, it is not the type of search condition required by *Cervantes* and *Samson* to uphold a valid probation search.

On the second point, in *State v. Hardges*, 294 Or App 445 (2018), the Oregon Court of Appeals narrowly interpreted the probation condition that the probationer "report as required and abide by the direction of the supervising officer" such that "abide by the direction" refers only to directions relating to the reporting requirement. Thus, it did not cover the alleged conduct at issue in *Hardges* of failing to reside at a transitional housing facility as set forth in probation's action plan. The Court of Appeals repeatedly has held that the general probation condition to "abide by the direction" of the probation officer refers only to reporting requirements. *See State v. Austin*, 344 Or App 368, 371 (2025); *State v. Cunningham*, 345 Or App 546, 549-50 (2025); *State v. Kelemen*, 296 Or App 184, 189 (2019).

Furthermore, a "directive" does not become the type of directive contemplated by the general "abide by directives" provision solely by virtue of being in an "Action Plan" signed by the probationer. *Cunningham*, 345 Or App at 550 ("The failure to comply with other directives from a probation officer does not violate that general condition, even when a probation officer and probationer agree to an 'action plan' that contains additional directives that are related to the purpose of probation.")

General Condition P in Mr. Taplin's list of conditions tracks the statutory language of the post-prison supervision statute, ORS 144.102(2)(b). The condition requires the supervisee to "be under the supervision" of the supervisory authority and "abide by their direction and counsel." Although the language of the statutory PPS condition is a bit different from the parallel probation condition, the Board intends for



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

these conditions to be applied consistently with respect to both probationers and persons on PPS. See Government Exhibit 2, page 1.[2]

In addition, using General Condition P to justify a suspicionless search unlawfully circumvents the requirement under Oregon law that the probation officer have reasonable grounds to believe that a search will reveal evidence of a violation before seeking consent to search a supervisee. The statutory search condition for persons on post-prison supervision codifies Article I, section 9, of the Oregon Constitution—the search and seizure provision. The Oregon Constitution requires the probation officer to have "reasonable grounds" to believe evidence of a violation will be found when requesting a probationer's consent to search. "Reasonable grounds" is a higher standard than "reasonable suspicion."

> To have "reasonable grounds" to seek a defendant's consent to search, the officer must have more suspicion than is required for "reasonable suspicion," but less than is required for "probable cause." *Gulley*, 324 Or. at 65, 921 P.2d 396. Like the reasonable suspicion standard, the officer seeking consent must possess specific and articulable facts that would lead him or her to believe that the probationer—or inmate on transitory leave—has committed a probation or release violation, "and that a search of the probationer's person, residence, vehicle, or property would disclose evidence of" the violation (or, as in this case, evidence that defendant has violated a condition of his release). *Id.* at 67, 921 P.2d 396. Additionally, the officer must be able to identify the specific violation suspected, rather than have a mere hunch that the person has engaged in generally criminal activity. *See State v. Maciel-Figueroa*, 361 Or. 163, 179, 389 P.3d 1121 (2017) (holding that such specificity is required when articulating grounds for reasonable suspicion).

[2] "In 2022, the Oregon legislature passed senate bill 1510 which amended the general conditions of supervision for probation in Oregon. In order to maintain consistency between probation and parole/post-prison supervision cases, the Board adopted those probation conditions as general conditions the Board imposes. Those changes took effect on June 1, 2022 and are ordered for anyone who is scheduled to release onto parole or post-prison supervision after June 1, 2022." Gov. Ex. 2, page 1. Mr. Taplin released on PPS in April 2024.



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

*State v. Canepa*, 313 Or App 348, 352-53 (2021).

The government would have the Court ignore all that and conclude that a probation officer, acting on their own initiative, may require a supervisee to consent to a search pursuant to the general "abide by directives" condition, and thereby circumvent the Oregon constitutional requirement of "reasonable grounds." If the Court were to accept this position, there would be no limit to an officer's ability to bypass the requirement of reasonable grounds. The officer could demand consent to search anything under the "abide by directives" clause. This would not be tolerated under Oregon law. *See State v. Guzman*, 164 Or App 90, 97-99 (1999) (probation condition requiring the probationer to permit the officer to conduct home visits did not authorize an entry to search the home in the absence of "reasonable grounds" to believe evidence of a violation would be found).

Putting aside the Oregon constitutional issue, the legislature likely did not intend the general "abide by directives" condition to authorize a suspicionless search. For sex offenders, the statutory conditions require, among many other things, random polygraph examinations, maintenance of a driving log, and a prohibition against using a post office box unless approved by the supervisory authority. ORS 144.102(4)(b)(J), (K), and (L). These conditions would be unnecessary if the legislature viewed them as authorized by the "directive" clause of General Condition P. It is unlikely that the legislature would have viewed GPS tracking, which is far more restrictive and intrusive of the probationer's expectation of privacy, as falling under GCp. Instead, because of its character as restrictive and intrusive, the legislature likely saw GPS tracking as a special condition that needed Board approval under ORS 144.102(4)(a).



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

Even more compelling evidence of legislative intent is found in ORS 144.103 which deals with post-prison supervision terms for persons convicted of serious sex crimes against children under the age of 12. The statute provides that persons on post-prison supervision for these crimes must be "actively supervised for at least the first 10 years of post-prison supervision and actively tracked for the remainder of the term. *Active tracking may be done by means of an electronic device attached to the person*." ORS 144.103(2)(c) (emphasis added). If the legislature believed General Condition P authorized probation officers to require GPS tracking, it would not have needed to expressly authorize GPS tracking for serious sex offenders in the later stage of supervision. The legislature must not have believed that the "abide by directives" condition was so broad as to permit this type of warrantless search for other supervisees.

The government relies on the Board's memorandum of November 14, 2023, stating that GPS may be ordered under GCp. (Government Exhibit 2). This is akin to a police sergeant telling a rookie that it's okay to search a home without a warrant. The Board is wrong to put a curfew or a geographic restriction—neither of which constitute a search—in the same category of GPS tracking, which clearly is a search. Moreover, this Court must not defer to the Board's opinion that GPS tracking is covered by GCp, because the opinion is contrary to state law as determined by Oregon state courts; and this Court is bound by a state *court's* interpretation of state laws, not the Board's interpretation. *See United States v. Ramos,* 39 F.3d 219, 220 (9th Cir. 1994) ("It is well established that a state court's interpretation of its statutes is binding on the federal courts unless a state law is inconsistent with the Federal Constitution.")



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

The government correctly does not attempt to argue that Mr. Taplin consented to the search by agreeing to GPS tracking. But not only did Mr. Taplin not consent, he was not given the opportunity to refuse consent. The right to refuse consent is another right of constitutional dimension that a supervisee retains on PPS. A supervised person subject to a search condition does not waive his right against unreasonable searches and seizures afforded by the Oregon constitution. *State v. Davis*, 133 Or App 467, 474 (1995). Therefore, the supervisee "is entitled to refuse to allow the search, and must be given a reasonable opportunity to do so." *Ibid*. Mr. Taplin was not given that opportunity, and this failure adds another layer of illegality to probation's conduct.

The probation officer may not override Mr. Taplin's lack to consent, because that would violate the Oregon constitution. Yet that is precisely what Officer Scott did when he insisted on GPS despite Mr. Taplin "pushing back" on the idea. Evidence that Mr. Taplin would not have consented had he been properly asked is his missing signature on the Electronic Monitoring Enrollment form. (Exhibit 4).

The Electronic Monitoring Enrollment Form is revealing in other ways relevant to the reasonableness of GPS tracking in this instance. Language in the form recognizes that GPS monitoring is highly intrusive of the supervisee's privacy. The probation officer must state the reason for the electronic monitoring, presumably to ensure that its use is narrowly tailored to serve a legitimate purpose. The probation officer must designate the period of enrollment, and a period of more than 30 days must be approved by a court or "CJM" (Community Justice Manager).

But, in this case, the form is flawed in ways that cut against that appreciation of the intrusiveness of GPS tracking. Not only does it not contain Mr. Taplin's signature, it



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

covers the wrong time period. It was generated on November 21, 2024, and envisioned that the GPS tracking would occur for only a 30-day period, starting on November 21 and ending on December 20, 2024. Instead, Mr. Taplin was placed on GPS monitoring on December 18, 2024, and it does not appear that a new 30-day enrollment period was formally approved and established before the original period ended.

In sum, because GPS tracking was not a lawful directive under GCp, it was not reasonable under constitutional standards. As *Samson* and *Cervantes* make clear, reasonableness of a probation search depends on compliance with state law. The government argues that the GPS condition was "reasonably related" to reforming Taplin and enforcing the condition that he not change residence without prior permission. (Gov. Resp. at 23-24). But the unlawfulness of the condition is not cured by the officer's purported reasons for wanting to put Taplin on GPS. Officer Scott simply did not have the authority to impose this condition for any reason. Lacking that authority, and without Mr. Taplin's consent, Officer Scott's only option was to seek Board approval for adding GPS as a condition. Had he done so, Mr. Taplin would have been entitled to a hearing to contest the new condition, and the Board would have been required to make certain findings in support. None of that procedural due process occurred, further piling on the unlawfulness and unreasonableness of the GPS search in this case.

Finally, defendant disputes the government's characterization of Mr. Taplin's performance as it relates to his living situation, and that can be addressed at the evidentiary hearing.

/ / /

/ / /



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

**b. The tracking and sharing of GPS data with police was not lawful**

The government downplays the use of GPS as only minimally intrusive, and, therefore "reasonable," because the officers used it only to know Taplin was at his residence on January 8, and they observed the alleged criminal activity with their own eyes.

To clarify, defendant's motion targets not only January 8, but also law enforcement's use of GPS tracking on January 15, 2025, which facilitated and directly resulted in the arrest and discovery of the firearm. Because GPS tracking on January 15 was an unlawful search, evidence from the resulting arrest must be suppressed on that ground alone. *See United States v. Terry*, 909 F.3d 716 (4th Cir. 2018) (drugs found in defendant's car, the stop of which was facilitated by unlawful GPS tracking, resulted in suppression).

With respect to January 8, the officers would not have been outside Taplin's apartment that day had they not employed this intrusive tool to track him down. Also, Detective Koenig's grand jury testimony (recently disclosed in discovery) reveals that the officers used GPS tracking data twice that day—initially, to know he was home so they could set up surveillance to observe the first alleged transaction, and then a second time after Mr. Taplin drove away and then returned so they could set up a second round of surveillance. (TAPLIN_0000488, lines 22-25). The viewings of both alleged transactions were separately aided by GPS tracking.

The importance of GPS tracking to investigate Mr. Taplin cannot be denied or downplayed. Before January 8, the text messages between Detective Koenig and Officer Sandberg demonstrate that Koenig needed Officer Sandberg to supply the GPS



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

data in order to "watch Taplin." (Exhibit 1, page 3). Officer Sandberg offered to help "mess with him," and by "help," he meant supplying the data that would bring law enforcement to Mr. Taplin's apartment. The unlawful search caused and facilitated the law enforcement action that day culminating in the observed transactions. There is a sufficient link between the unlawful search and the observed transactions which, therefore, cannot be used to support probable cause. *See United States v. Smith*, 155 F.3d 1051 (1998) (suppression appropriate when unlawful search "or any leads gained from illegal activity, tend[ed] *significantly to direct* the investigation toward the specific evidence sought to be suppressed") (internal citation omitted; emphasis in original).

The government's argument of only a minimal intrusion is reminiscent of one the Supreme Court has rejected, *i.e.,* that tracking technology is not a search because a person does not have a reasonable expectation of privacy in not being followed by police in public. The Court has held that, "[p]rior to the digital age, pursuing a suspect for any extended period of time was difficult and costly and therefore rarely undertaken. As a result, society's expectation has been that law enforcement agents and others would not – and indeed, in the main, simply could not – secretly monitor and catalogue every single movement of an individual's car. * * * A new technology should not transform what individuals had reasonably thought they could withhold from the Government." *Chatrie v. United States*, 146 S.Ct. 2193, 2206-07 (2026) (internal quotes and citations omitted).

The Supreme Court has held, "[w]here the Fourth Amendment applies, it applies—regardless of the quality or quantity of information the government obtains." *Chatrie*, 146 S.Ct. at 2210 (internal quote omitted). That said, the quality and quantity



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

of information revealed by GPS tracking is not minimal. *See Simon v. City and County of San Francisco*, 135 F.4th 784, 810 (9th Cir. 2025) (GPS is more intrusive than capturing cell-site location information which was deemed a search in *Carpenter v. United* States, 585 U.S. 296 (2018), because GPS constantly monitors someone's location). GPS tracking collects information about a person's movements, locations, and associations on a non-stop basis. Law enforcement may access that information at a time of its choosing, whenever it is most advantageous to its goals. Therefore, when characterizing the intrusiveness of the tool, it is not reasonable to focus only on the times that law enforcement is actively using the data to track a person. Mr. Taplin was being tracked 24 hours a day and seven days a week, not just for the limited times he was at his home on January 8 or being tracked on January 15.

The government also cites a couple cases for the proposition that it was lawful for probation to share GPS data with Portland police, including *United States v. Matthews*, 250 F. Supp. 3d 806 (D. Colo. 2017). (Gov. Response at 25). Neither case addresses Oregon law, so they have no relevance here. The importance of state law is highlighted in the Tenth Circuit case discussed in *Matthews*—*United States v. Freeman*, 479 F.3d 743 (10th Cir. 2007)—in which the Court suppressed evidence from a probation search because it violated Kansas law that required only probation officers, not police officers carry out probation searches and only with reasonable suspicion. *Freeman*, 479 F.3d at 748-50. That's precisely the situation here.

State law matters. The government fails to address defendant's contention that Oregon law prohibits law enforcement involvement in a probation search unless the police officer acts as an agent of the probation officer in executing the search. The



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

government also ignores the text messages between Officer Koenig and Probation Officer Sandberg that demonstrate that Koenig is not merely acting as an agent of probation with respect to GPS tracking. Rather, his messages show that he is keenly interested in seeing Taplin on GPS and wants access to the tracking data so he and his team can "creep" on him for purely law enforcement purposes. That is unlawful under Oregon law.

Next, the government gets the facts wrong on page 26 and forgets the position it has taken in discovery. It writes:

- "At the time that data was shared, [Taplin's] supervising officers knew that Taplin was committing new drug offenses…" That is not correct. Probation shared data with police on January 8, 2025, *before* there was any evidence of "new drug offenses."
- Defendant "was a prime suspect in an overdose death…" The government has refused to provide discovery of the alleged overdose death, including the deceased person's phone, law enforcement reports, and the medical examiner's report. The government may not claim the alleged overdose death supports the reasonableness of the GPS search while at the same time refusing to turn over relevant evidence.[3]
- "[Probation] also knew, after the search warrant had been obtained, that a court had found probable cause to search defendant's residence and person, giving

[3] The government also gets the facts wrong when it claims that the phone number that the January 8 buyers identified as belonging to their dealer was the same number identified as belonging to the overdose victim's suspected dealer. (Gov. Resp. 7). The dealer's number on January 8 ended in x5909, whereas the number of the alleged dealer in the overdose investigation ended in x0023.



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

clear indication that crimes had been committed while defendant was under supervision." The search warrant was issued on January 10, two days *after* probation provided the GPS data to the police that caused the police to develop the probable cause that supported the search warrant. So how could the issuance of the search warrant possibly justify the previous sharing of GPS data?

Finally, the government argues that the search of defendant on January 15 was "within the authorization" of the warrant issued on January 10. (Gov. Response, at 19). But the search warrant was invalid because probable cause depended on the unlawful GPS search. Without the use of GPS tracking that put the officers at defendant's doorstep, there is no probable cause.

**3. Evidence Of Drugs And Cash Is Not Admissible As Search Incident To An Arrest**

The government argues that, once the officers saw the firearm, they had grounds to arrest him for felon in possession of a firearm, and, therefore, the contents of his pocket are admissible as resulting from a search incident to arrest. But the officers would not have seen the gun without the arrest prompted by the unlawful GPS search. Because the arrest was unlawful as argued in this motion, the officers' discovery of the gun was the unlawful fruit of the arrest. Therefore, the gun cannot provide a fresh justification for arresting and searching Mr. Taplin.

/ / /

/ / /

/ / /



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

### 4. Suppression Is The Correct Remedy

The Court must suppress the evidence in order to deter wrongful police conduct that violates clearly established law:

- The state actors ignored clearly established law that GPS tracking is a search.
- The state actors ignored clearly established law that a probation search requires a valid search condition. General Condition P obviously is not a search condition.
- The state actors ignored clearly established law that in order for a probation search to meet Fourth Amendment standards, the search must follow state law.
    - The state actors ignored state law that requires reasonable grounds to support a search and a reasonable opportunity for the supervisee to refuse consent;
    - The state actors ignored state law that prohibits police involvement with a probation search unless the officer acts as an agent of probation.
- Because of the many violations and irregularities identified in defendant's motion, the state actors conduct should be deemed arbitrary, capricious, and harassing of the defendant.

The evidence must be suppressed.

/ / /



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497

**5. Conclusion**

The GPS monitoring constituted an unreasonable search in violation of Mr. Taplin's rights under the Fourth Amendment, for all the reasons stated in defendant's initial pleading and this reply. All evidence derived from the unreasonable search must be suppressed.

DATED this 13th day of August, 2026.

HOEVET OLSON, PC

*s/ Per C. Olson*
Per C. Olson, OSB #933863
Of Attorneys for Defendant



HOEVET OLSON, PC
ATTORNEYS AT LAW
1000 S.W. BROADWAY, #1740
PORTLAND, OREGON 97205
(503) 228-0497